**WILLIAM H. THOMAS (ISB 3154)**
**THOMAS, WILLIAMS & PARK, LLP**
**121 N. 9th St., Ste. 300**
**P. O. Box 1776**
**Boise, ID 83701-1776**
**Telephone (208) 345-7800**
**Fax: (208) 345-7894**
**wmthomas@twplegal.com**

**Attorneys for Plaintiff**

### THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **IDAHO FIRST BANK**, an Idaho State Chartered Bank, | Case No. _____ |
| Plaintiff, | |
| vs. | COMPLAINT |
| **ALCAR, LLC**, a Delaware limited liability company, | |
| Defendant. | |

Idaho First Bank, through counsel, and for its complaint against Defendant Alcar, LLC, alleges as follows:

### INTRODUCTION

1. Idaho First Bank brings this lawsuit for breach of contract, breach of the covenant of good faith and fair dealing and for declaratory relief against Alcar, LLC, seeking to retain $300,000 in liquidated damages as provided for in a contract between Idaho First Bank and Alcar, LLC. Idaho First Bank alleges Alcar, LLC breached the

COMPLAINT, P. 1

Preferred Stock Purchase Agreement between Idaho First Bank and Alcar, LLC, and requests an award of liquidated damages in the amount of $300,000.

## PARTIES

2. Plaintiff, Idaho First Bank ("IFB") is an Idaho corporation with its principal place of business in McCall, Idaho. IFB is a citizen of the State of Idaho.

3. Defendant Alcar, LLC ("Alcar") is a Delaware limited liability company with its principal place of business located at 1995 Broadway, 8th Floor, New York, New York. Alcar is doing business in the State of Idaho. Alcar is a citizen of the State of Delaware.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 USC § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as between citizens of different states. In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 USC § 1367 and under the Declaratory Judgment Act, 28 USC § 2201 and § 2202.

5. The venue for this action in the United States District Court for the District of Idaho is proper, pursuant to 28 USC § 1391 because the events giving rise to Plaintiff's claims occurred in the District of Idaho and the parties have contractually consented to venue in Ada County, Idaho. Venue is proper in the Southern Division of the United States District Court of the District of Idaho pursuant to D.Id.L.Civ.R.3.1

## ALLEGATIONS TO ALL CLAIMS

6. On or about April 28, 2009, IFB and Alcar entered into a Preferred Stock Purchase Agreement ("Purchase Agreement"). Pursuant to the Purchase Agreement, Alcar agreed to purchase and IFB agreed to sell Seven Thousand, One Hundred (7,100) shares of IFB's Series A Convertible Preferred Stock, par value $1,000 per share ("Securities"). Attached to this Complaint as Exhibit A is a true and correct copy of the executed Purchase Agreement.

7. Pursuant to the Purchase Agreement, Alcar agreed to deposit Two Million, Five Hundred Thousand Dollars ($2,500,000) as a deposit on the total purchase price for the Securities concurrent with the execution of the Purchase Agreement.

8. On or about May 6, 2009, Alcar deposited the $2,500,000 in an account with IFB.

9. Pursuant to the Purchase Agreement, IFB agreed to prepare a proxy statement to its shareholders for the purpose of obtaining IFB shareholder approval for the stock purchase transaction with Alcar.

10. The IFB Board of Directors affirmatively agreed to recommend to IFB's shareholders that they approve the stock purchase transaction with Alcar.

11. IFB's Board of Directors' obligation to recommend the stock purchase transaction with Alar "shall be subject to and conditioned on the Bank Receiving a Fairness Opinion by May 30, 2009."

12. IFB had engaged an investment banking firm to conduct due diligence upon which it would base the Fairness Opinion of the purchase transaction.

COMPLAINT, P. 3

13.     Pursuant to the Purchase Agreement, Alcar had the right to terminate the Purchase Agreement in the event IFB failed to obtain a fairness opinion.

14.     Prior to April 28, 2009, IFB's financial condition had been subject to multiple examinations by federal and state regulators, as well as independent outside auditing firms.

15.     The results of the examinations were uniformly consistent in that they identified similar strengths and weaknesses in IFB's financial condition.

16.     The results of these examinations were provided to Alcar from the inception of negotiations between IFB and Alcar for the stock purchase transaction.

17.     Alcar engaged two separate independent bank auditing firms to conduct due diligence on behalf of Alcar. The results of these two evaluations determined the financial condition of IFB was similar to the prior examinations which had already been conducted.

18.     At the insistence of one of Alcar's investors, William Spiegel, Alcar retained a third firm, "SRA," to examine IFB's financial condition.

19.     SRA's report was significantly different from the previous, recently conducted examinations. SRA's report significantly de-valued IFB's assets, including, *inter alia*, the quality of IFB's loan portfolio, the amounts reserved for loan losses, and, ultimately, the price Alcar was paying under the Purchase Agreement.

20.     IFB strenuously disagreed with not only SRA's findings as a result of SRA's financial review, but also with SRA's methodology in arriving at its conclusions.

21. Following several discussions with Alcar, during which Alcar insisted that SRA's examination results were the most valid, Alcar demanded that IFB re-price the stock purchase transaction. Alcar insisted that rather than apply a fixed price for the stock purchase transaction, pricing should be based on a formula to be applied over time.

22. IFB reported this material change in pricing to its investment banker, who concluded that, based on Alcar's re-pricing demands which the parties had not agreed to, they could not give a Fairness Opinion and the re-pricing demand was Alcar's notice of termination of the Purchase Agreement.

23. From April 28, 2009 through the date of this Complaint, Alcar has failed to abide by the obligations it undertook under the Purchase Agreement, including, but not limited to: (i) failure to cooperate in the regulatory application process; (ii) failing to provide IFB with required documentation; and, (iii) anticipatory failure to meet certain deadlines.

24. Pursuant to the Purchase Agreement, either IFB or Alcar may terminate the Purchase Agreement for a material breach of any covenant or agreement on the part of the other.

25. Pursuant to the Purchase Agreement, either IFB or Alcar may terminate the Purchase Agreement if IFB fails to receive a Fairness Opinion.

26. Pursuant to the Purchase Agreement, Section 6.04(j) Alcar:

> "may terminate this Agreement by notice to the Bank and by making to the Bank a payment in an amount equal to $250,000 (the "Purchaser Termination Fee) in which case this Agreement shall become null and void and there shall be no obligation of either

party hereto except as set forth in Section 6.08(c). In addition to the payment of the Purchaser Termination Fee, in circumstances where the Purchaser Termination Fee is payable, the Purchaser shall simultaneously with the payment of the Seller Termination Fee, reimburse the Bank for the out-of-pocket expenses incurred by the Bank (which shall included, without limitation, fees and expenses of outside legal counsel and accountants) in connection with this Agreement and the Transactions, including the fees and expenses of the Bank in preparing information for the Purchaser's due diligence investigation in connection with the Transactions, up to a maximum expense reimbursement of $50,000. A termination pursuant to the preceding sentence shall supersede any other termination hereunder. The parties acknowledge and agree that in the event Purchaser terminates this Agreement in accordance with the first sentence of this Section 6.04(j) that the receipt of the payment referred to in this Section 6.04(j) shall serve as liquidated damages to compensate the Bank with respect to any damages under this Agreement and be the sole and exclusive remedy of the Bank with respect to this Agreement and Purchaser shall have no further obligation hereunder or with respect hereto except as otherwise provided in this Agreement.

27. By demanding that IFB re-price the Purchase Agreement, Alcar gave notice that it had terminated the Purchase Agreement.

28. At the time Alcar demanded that IFB re-price the Purchase Agreement, Alcar was obligated to pay the $250,000 Purchaser Termination Fee, pursuant to Section 6.08(c), which states:

> (c) In the event that this Agreement is terminated by the Purchaser pursuant to Section 6.04(j), the Purchaser shall pay Bank an amount equal to the Purchaser Termination Fee. Any payment required to be made pursuant to this Section 6.08(c) shall be made to Bank within 3 (three) Business Days, and as a condition to the effectiveness of, the termination of this Agreement by the Purchaser pursuant to Section 6.04(j) and such payment shall be made by wire transfer of immediately available funds to an account designated by Bank.

29. At the time Alcar terminated the Purchase Agreement, Alcar did not pay the $250,000 Purchaser Termination Fee.

COMPLAINT, P. 6

30. IFB's out-of-pocket expenses incurred as of the date of this Complaint, exceed $50,000.

## FIRST CAUSE OF ACTION AGAINST ALCAR

### (Declaratory Judgment Under 28 USC § 2201)

31. IFB repeats the foregoing allegations and incorporates them herein by reference.

32. There is an actual case in controversy between IFB and Alcar regarding the termination of the Purchase Agreement by Alcar and the liquidated damages provisions of the Purchase Agreement, and the issuance of a declaratory judgment will serve to terminate the existing uncertainty and controversy between the parties.

33. In order to afford complete relief and avoid undue prejudice to all parties in this matter, a determination must be made regarding the obligations owed by Alcar to IFB under the Purchase Agreement.

34. IFB is entitled to a declaration of its right under the Purchase Agreement.

35. In addition to other declarations to which it may be entitled, IFB is entitled to a binding declaration that it is entitled to retain the $300,000 in liquidated damages presently in its possession.

## SECOND CAUSE OF ACTION

### (Alcar's Breach of Purchase Agreement)

36. IFB repeats the foregoing allegations and incorporates them herein by reference.

37. Alcar has breached the terms and conditions of the Purchase Agreement by demanding a re-pricing and in failing to comply with other covenants and conditions of the Purchase Agreement.

38. As a result of Alcar's Breach of the Purchase Agreement, IFB has been damaged in an amount no less than $300,000.

### THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

39   IFB repeats the foregoing allegations and incorporates them herein by reference.

40. Implied in the Purchase Agreement was the covenant of good faith and fair dealing.

41. The covenant of good faith and fair dealing requires the parties to a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract.

42. Alcar's dealings with IFB have frustrated the purposes of the covenant of the Purchase Agreement by taking advantage of its position to control or attempt to control implementation of the terms of the Purchase Agreement.

43. As a direct and proximate result of Alcar's breach of the covenant of good faith and fair dealing, IFB has been damaged in an amount no less than $300,000.

## FOURTH CAUSE OF ACTION

### (Specific Performance)

44.  IFB repeats the foregoing allegations and incorporates them herein by reference.

45.  Pursuant to the Purchase Agreement, Section 6.17, Alcar agreed:

> Specific Performance. The parties hereto agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof in the United States District Court for the District of Idaho or any Idaho State court sitting in Ada County, Idaho in addition to any other remedy to which they are entitled at law or in equity.

(Emphasis in original.)

46.  IFB has and continues to suffer irreparable damage through Alcar's breaches of the Purchase Agreement.

47.  IFB is entitled to Alcar's specific performance of its obligations under the Purchase Agreement.

### ATTORNEY FEES

48.  Alcar's acts and omissions in its performance under the Purchase Agreement have caused IFB to retain legal counsel to protect and preserve its rights and to initiate this lawsuit. IFB is entitled to its reasonable attorneys' fees under the contractual provisions of the Purchase Agreement as well as under Delaware law.

### WAIVER OF JURY TRIAL

49.  Pursuant to Section 6.13 of the Purchase Agreement:

<u>Consent to Jurisdiction</u>: WAIVER OF JURY TRIAL. Each of the parties hereto (a) consents to submit itself to the personal jurisdiction of any Federal or state court located in Ada County, Idaho in the event any dispute arises out of this Agreement, any of the Ancillary Documents or the Transactions, (b) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court and (c) agrees that it will not bring any action relating to this Agreement, any of the Ancillary Documents or the Transactions in any court other than a Federal or state court located in AdaCounty, Idaho. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMETN OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(Emphasis in original.)

## PRAYER

WHEREFORE, Plaintiff, Idaho First Bank prays for entry of judgment against Defendant Alcar, LLC, as follows:

1. On Plaintiff's First Cause of Action for Declaratory Relief, that a declaration pursuant to the Declaratory Judgment Act be entered declaring, *inter alia*, Alcar, LLC to be in default of the Purchase Agreement; declaring IFB to be entitled to liquidated damages of $300,000; and, declaring that IFB be and hereby is entitled to retain the liquidated damages from Alcar funds on deposit with it.

2. On Plaintiff's Second and Third Causes of Action, that judgment be entered against Alcar, LLC, for breach of contract and breach of the covenant of good faith and fair dealing in an amount no less than $300,000.

3. On Plaintiff's Fourth Cause of Action, that judgment be entered against Alcar, LLC ordering Alcar, LLC specifically to perform its obligations under the Purchase Agreement, including, but not limited to, payment of the $300,000 liquidated damages.

4.  That IFB be awarded its reasonable costs and attorney fees pursuant to the Purchase Agreement and Delaware law; and

5.  For such other relief as the Court deems just and equitable.

DATED this ____ day of May, 2009.

THOMAS, WILLIAMS & PARK, LLP

_____
William H. Thomas
Attorney for Plaintiff

COMPLAINT, P. 11